# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-cv-2561-RBJ

PRECISION DISCOVERY, INC., f/k/a
PRECISION DISCOVERY, LLC

Plaintiff,

v.

HITACHI VANTARA CORPORATION f/k/a
HITACHI DATA SYSTEMS, COLD
CREEK SOLUTIONS, INC., and
HOWARD HOLTON, in his individual and
professional capacities,

Defendants.

## RESPONSE TO ORDER TO SHOW CAUSE

In Response to the Honorable R. Brooke Jackson's Order to Show Cause for reasons why this action should not be dismissed for a failure to prosecute, Plaintiff Precision Discovery, Inc., f/k/a Precision Discovery, LLC ("Plaintiff" or "Precision"), by and through its undersigned counsel admitted *pro hac vice*, Wigdor LLP, and its local counsel, Harris, Karstaedt, Jamison & Powers, P.C., respectfully submits the following response:

1. This case was originally filed by Plaintiff on October 5, 2018. See ECF Dkt. No 1.

2. However, prior to filing the instant action with the Court, Plaintiff had been the subject of a lawsuit by Hitachi Data Systems Credit Corporation ("HDSCC"), which is a related entity to one of the Defendants in the instant action, Hitachi Vantara

Corporation F/K/A Hitachi Data Systems ("HDS").[1]  That action, styled <u>Hitachi Data Systems Credit Corp. v. Precision Discovery</u>, 17-cv-06851 (SHS), was filed in the Southern District of New York ("SDNY") in October 2017 (the "HDSCC Action").

3. On November 14, 2017, Precision filed its Answer to the HDSCC Action. Precision simultaneously filed counterclaims against HDSCC and third party claims against HDS and Cold Creek Solutions, Inc. ("Cold Creek"). <u>See</u> Ex. 1.

4. On January 19, 2018, HDS filed a Motion to Dismiss Precision's Counterclaims in the HDSCC Action, on the grounds that the Southern District of New York did not have personal jurisdiction over it as a defendant and asserting that Precision failed to state a cause of action.

5. On February 2, 2018, Cold Creek filed a similar Motion to Dismiss, on the grounds the Southern District of New York did not have personal jurisdiction over it as a defendant and that Precision failed to state a cause of action.

6. On September 7, 2018, the SDNY Court issued an Order on the Motions to Dismiss filed by HDS and Cold Creek in the HDSCC Action.  Specifically, the SDNY Court ordered that Precision's claims against HDS and Cold Creek were required to be dismissed because of a lack of personal jurisdiction.  However, the SDNY Court permitted Precision's counterclaims against HDSCC to proceed to discovery.  <u>See</u> Ex. 2.

---

[1] Specifically, HDSCC is engaged in the business of providing intermediate or long-term general and industrial credit to its Hitachi client lessees, including Precision, for the equipment they lease from HDS.  In other words, HDSCC was, at all relevant times, merely acting as the financing pass-through company for the services actually provided by HDS and/or Cold Creek, providing capital to Precision that was immediately passed through to the other technology/equipment entities (e.g., HDS and Cold Creek).

7. Thereafter, Plaintiff instituted the instant action against HDS and Cold Creek on October 9, 2018.

8. Before engaging in discovery in the HDSCC Action, Precision and HDSCC agreed to attend a private mediation on December 13, 2018. The goal of the private mediation was to facilitate a global resolution of all claims in both the HDSCC Action and in the instant action.

9. In deference to the December 13, 2018 mediation, and in an effort to save costs and resources for all parties, Precision did not take any action to serve HDS at that time.

10. Although the December 13, 2018 mediation was unsuccessful, the SDNY Court in the HDSCC Action ordered the parties to attend a second mediation in an effort to resolve all of the claims asserted by the parties. See Ex. 3.

11. Subsequently, Precision and HDSCC attended a second mediation on February 21, 2019.

12. At the February 21, 2019 mediation, Precision and HDSCC reached an agreement in principle that would have resolved all of the claims in the HDSCC matter, and that would have necessitated a global release covering the instant action as well.

13. Accordingly, on February 25, 2019, Precision filed an unopposed motion with the Court seeking an extension of all of the deadlines in this case for a period of 30 days to allow the parties to finalize the settlement agreement. See Dkt. No. 10.

14. Unfortunately, despite the fact that all of the parties worked diligently to finalize an agreement based upon the tentative framework of the resolution that had been reached at the February 21, 2019 mediation, the nature of the settlement proved

complex and involved several unusual legal complications due to the nature of the corporate entities and disputed debts involved (e.g., Precision is an Employee Stock Ownership Plan (ESOP)). As a result, the parties ultimately were unable to agree to a formal settlement.

15. Precision then promptly filed an Amended Complaint as a matter of right pursuant to Federal Rules of Civil Procedure 15(a).

16. However, despite the fact that the parties could not formalize a settlement pursuant to the terms reached at the February 21, 2019 mediation, the parties continued to discuss the framework of a different resolution, and exchanged several substantive settlement proposals in the intervening weeks.

17. Because the parties continued to attempt to resolve the claims related to this case, on April 11, 2019, Precision consented to Cold Creek's Request for an Extension of Time to Answer the Amended Complaint. See Dkt. No. 15.

18. Precision did not grant Cold Creek's request in an effort to delay the case or to abandon its claims. Instead, it again sought to preserve all of the parties' resources by allowing Cold Creek to avoid the expenditure of unnecessary time and expense when Precision believed, in good faith, that the parties still could successfully reach a global settlement.

19. As further evidence that Precision did not seek to simply delay the prosecution of its claims, Precision filed an Amended Complaint on March 29, 2019 and filed an Answer to Cold Creek's Counterclaims on that same date. See Dkt. No. 12 and 13.

20.     The Answer to Cold Creek's Counterclaims and the Amended Complaint were filed by Precision on March 29, 2019, within the deadlines set forth in this Court's February 26, 2019 Order.  <u>See</u> Dkt. No. 11.

21.     Precision served HDS with a copy of the Complaint on June 27, 2019.

22.     As explained above, Precision deferred serving HDS in an effort to save the parties resources, while attempting to negotiate a resolution with the Hitachi entities that would encompass the claims in both the HDSCC Action and the instant action.

23.     Precision's desire to save resources was particularly important because Plaintiff has been experiencing significant financial difficulties over the last several months.

24.     The financial issues with Precision have become so severe that it has called into question its ability to function as an ongoing concern.

25.     As a result, Precision has been diligently searching for a buyer to acquire it.

26.     Given the uncertainties facing Precision, as well as its dire financial situation, it did not make sense to spend additional money and resources on a lawsuit until it was clear that a resolution was not imminent, and Plaintiff secured a level of stability concerning its future prospects.

27.     Recently, however, Precision has entered into negotiations with a potential buyer that would alleviate the financial issues it faces.

28.     Precision is therefore prepared to proceed with litigating this action.

29.     Precision's decision earlier this month to consent to HDS's request for additional time to serve its Answer was not a dilatory tactic.

30. Instead, Precision consented to HDS's request as a matter of professional courtesy that Plaintiff's counsel customarily extends to its adversaries, particularly where it has been represented that HDS has obtained new counsel in the instant matter and the new attorneys needed the additional time to become familiar with the case and prepare their papers.

31. Because HDS had recently retained counsel in this matter, Precision had no objection to HDS's counsel taking additional time to get up to speed in the case before proceeding.

32. Precision's decision to defer serving Defendant Holton likewise was not a delay tactic.

33. In Precision's February 25, 2019 Unopposed Motion to Extend the Deadlines in the case, Precision requested that its deadline to file an Amended Complaint as a matter of right be extended until March 29, 2019. See Dkt. No. 10.

34. The Court granted this request on February 26, 2019. See Dkt. No. 11.

35. In keeping with the Court's deadlines, as explained above, Precision filed an Amended Complaint on March 29, 2019. See Dkt. No. 13.

36. That same day, Precision filed a Request for a Summons to be Issued so that it could effectuate service on Howard Holton. See Dkt. No. 14.

37. Plaintiff subsequently filed a Notice of Filing an Amended Complaint, with a red-lined copy of the Amended Complaint reflecting the changes made, pursuant to Local Civil Rule 15.1 (a), on April 19, 2019.

38. When Plaintiff served HDS in June 2019, it noticed that the Court had never issued a summons for Mr. Holton.

39. Subsequently, in speaking with the Court's clerk, Plaintiff learned that it was not permitted to file the Amended Complaint as a matter of right pursuant to Federal Rules of Civil Procedure 15(a)(1).

40. The clerk informed Precision that, because the Amended Complaint was filed more than 21 days after Cold Creek filed a responsive pleading, the Amended Complaint needed to be filed through a motion, as set forth in Federal Rules of Civil Procedure 15(a)(2).

41. Although Precision pointed out that the parties had agreed to extend Plaintiff's time to file an Amended Complaint, and the Court had subsequently granted the extension request, Precision was told that the parties' agreement was insufficient to extend the deadline.

42. Again, Plaintiff intended to, and still intends to, prosecute its claims, including against Defendant Holton.

43. Plaintiff's delay in serving Holton is simply due to the confusion about the Court's practices, which Precision will promptly remedy.

44. As a result of the foregoing, Plaintiff respectfully requests that the Court permit it to continue to prosecute this action.

45. There will be no prejudice to any party if Plaintiff is permitted to proceed with its lawsuit, as evidenced by the parties' cooperation on deadlines and other matters to date.

46. If permitted to do so, Plaintiff intends to promptly and diligently litigate this case going forward.

47.   Plaintiff does not anticipate any issues that would cause further delays in this action at this time.

WHEREFORE, Plaintiff respectfully requests that the Court keep this action on its Docket for the reasons set forth in this Response.

Dated: July 29, 2019
       Denver, Colorado

**WIGDOR LLP**

By: _____
    Lawrence M. Pearson

85 Fifth Avenue, Fifth Floor
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
lpearson@wigdorlaw.com

- and -

**HARRIS, KARSTAEDT, JAMISON & POWERS, P.C.**

1033 E. Dry Creek Road, Suite 300
Englewood, CO 80112
Tel: (720) 875-9140
Fax: (720) 875-9141
jjamison@hkjp.com

*Attorneys for Plaintiff*